IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IVAN VON STAICH,

    Plaintiff,                    No. CIV S-05-1235 GEB GGH P

  vs.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.              FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' March 7, 2007, motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). After carefully considering the record, the court recommends that defendants' motion be granted in part and denied in part.

LEGAL STANDARD FOR MOTION TO DISMISS

        In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a

legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" NOW, 510 U.S. at 256, 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

DISCUSSION

This action is proceeding on the second amended complaint filed April 25, 2006. The defendants are Governor Schwarzenegger and two members of the California Board of Parole Hearings, Welch and Quintiliani. Plaintiff was convicted of second degree murder in

1985 and sentenced to 15 years to life. The amended complaint contains twelve claims for relief concerning the 2002 decision by defendants Welch and Quintiliani finding plaintiff unsuitable for parole. Plaintiff seeks injunctive and declaratory relief only.

Defendants first argue that the claims against all defendants should be dismissed on grounds that they are entitled to quasi-judicial immunity. Quasi-judicial immunity protects from damages but does not cover prospective injunctive relief. Ashelman v. Pope, 793 F.2d 1092, 1075 (9th Cir. 1986). Since plaintiff seeks only declarative and prospective injunctive relief, immunity is not a valid reason to dismiss his claims.

Defendants next argue that plaintiff's claims should be dismissed because his sole remedy is a petition for writ of habeas corpus. Defendants argue that plaintiff seeks invalidation of the 2002 decision finding him unsuitable for parole, thus implicating the validity of his confinement.

Many parole claims must be brought in habeas corpus actions rather than civil rights actions because they are requests for an immediate or speedier release into the community. See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827, 1841 (1973). In Wilkinson v. Dotson, 544 U.S. 74, 82, 125 S. Ct. 1242, 1248 (2005), the Supreme Court addressed the issue of whether an inmate could challenge a parole denial via a § 1983 action rather than habeas corpus action. The Supreme Court determined that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility ...and parole suitability," but he may not seek "an injunction ordering his immediate or speedier release into the community." 544 U.S. at 82, 93 S. Ct. at 1248. At most, an inmate can seek as a remedy "consideration of a new parole application" or "a new parole hearing," which may or may not result in an actual grant of parole. Id.

In order to determine whether plaintiff's claims should be raised in a habeas action, the court must analyze them separately.

/////

Claim one alleges that Cal. Code of Regs. tit. 15, § 2402(c)(1), relied on by defendants to find plaintiff unsuitable for parole, is unconstitutionally vague. Section 2402(c)(1) and its subsections set forth factors regarding the commitment offense tending to show that a prisoner is unsuitable for parole:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

Plaintiff argues that the terms heinous, atrocious and cruel in § 2402(c)(1) are unconstitutionally vague. This claim challenges a procedure used to deny parole eligibility. A finding that this section is unconstitutionally vague does not necessarily demonstrate that plaintiff should be released on parole. Rather, the remedy would be for defendants to conduct a new suitability hearing using regulations which are not unconstitutionally vague. Accordingly, this claim may be brought in a civil rights action.

Defendants also argue that claim one should be dismissed for failing to state a cognizable claim. A statute (or regulation) is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement." United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989). The threshold question in a vagueness challenge is "whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in a particular case." Schwartzmiller v. Gardner, 752 F.2d 1341, 1346 (9th Cir. 1984).

Where speech or other constitutionally protected conduct is not the subject of a statute or regulation and is not otherwise implicated in the case and if related constitutional rights are not expressly invoked in a challenge to facial validity, the court need only examine the

vagueness challenge under the facts of a particular case and decide whether, under a reasonable construction of the statute or regulation, the conduct in question is prohibited. United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir. 1985). Finally, "[i]n scrutinizing a statute for intolerable vagueness as applied to specific conduct, courts must 'take the statute as though it read precisely as the highest court of the state has interpreted it." Schwartzmiller, 752 F.2d at 1348.

In the instant case, speech is in no way implicated. Accordingly, to state a colorable claim plaintiff must demonstrate that section 2402(c)(1) failed to give him reasonable notice as to how the factors regarding his commitment offense would be used to determine his parole eligibility.

Plaintiff cites Maynard v. Cartwright, 486 U.S. 356, 108 S. Ct. 1853 (1988) in support of this claim. In Maynard, the Supreme Court found that the words heinous, atrocious and cruel were unconstitutionally vague in the context of jury instructions given in the penalty phase of a death penalty case. The Supreme Court found that this language was too vague to sufficiently guide the sentencer. Maynard, 486 U.S. at 360, 108 S. Ct. at 1857. Because Maynard involved jury instructions in a capital case, it is not particularly applicable to the instant claim.

In the instant case, § 2402(c)(1)(A)-(E) sets forth factors which are used to determine whether the commitment offense was committed in a heinous, atrocious or cruel manner. Plaintiff does not argue that any of the factors contained in subsections (A)-(E) are unconstitutionally vague. Accordingly, the court finds that § 2402(c)(1), read in combination with the rest of that section of the regulation, i.e. § 2402(c)(1)(A)-(E), gave plaintiff reasonable notice regarding how the factors concerning his commitment offense would be used to determine his parole eligibility. For these reasons, this claim should be dismissed.[1]

\\\\\

---

[1] The problem with California's parole suitability criteria lie not with the clarity of the words, but with their near universal application, at least in some significant part, to any murder.

5

1         Claim two alleges that defendants found him unsuitable for parole by treating his second degree murder conviction as a first degree murder conviction, in violation of the Double Jeopardy Clause. A finding that defendants violated the Double Jeopardy Clause by treating plaintiff's second degree murder conviction as a first degree murder conviction does not necessarily demonstrate that plaintiff should be released on parole. Rather, the remedy would be for defendants to conduct a new suitability hearing that does not violate the Double Jeopardy Clause. Accordingly, the court may consider this claim.

         Defendants move to dismiss claim two for failing to state a cognizable claim. The Double Jeopardy Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The provision protects against a second prosecution for the same offense and multiple punishments for the same offense. Witte v. United States, 515 U.S. 389, 396, 115 S. Ct. 2199, 2204 (1995); United States v. Wolfswinkel, 44 F.3d 782, 784 (9th Cir. 1995). Because parole is part of the original sentence, decisions concerning parole do not constitute multiple punishments for the original offense. See United States v. Brown, 59 F.3d 102, 104-105 (9th Cir. 1995) (per curiam). Accordingly, this claim is legally frivolous and should be dismissed.

         Claim three alleges that defendants violated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), by relying on 9 rules violation reports to find plaintiff unsuitable for parole. Plaintiff claims that defendants used these reports to keep him in prison under the same time limit matrixes California law provides for first degree murderers. Plaintiff argues that Apprendi requires that the facts of the rules violation reports relied on by defendants to increase his sentence to that of a first degree murderer be reviewed by a jury.

         Claim three challenges the procedures used to deny parole. Accordingly, this claim may be raised in a civil rights action.

\\\\\

Defendants also move to dismiss claim three for failing to state a colorable claim for relief. In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2263. This court is aware of no authority providing that Apprendi applies to parole suitability determinations. Moreover, plaintiff was sentenced to 15 years to life. Defendants did not use the rules violations to increase his sentence beyond the statutory maximum, i.e. life. While California regulations provide guidelines that defendants may use in setting terms for life prisoners, the fact remains that plaintiff's maximum term is life. For these reasons, the court finds that plaintiff's claim alleging a violation of Apprendi v. New Jersey is without merit and should be dismissed.

In claim four, plaintiff alleges that Cal. Penal Code §§ 3041 and 3041.5 are unconstitutionally vague because they do not specify whether the hearing held one year prior to a prisoner's minimum eligible parole date (MEPD) is for determining parole suitability or to set a parole date. Plaintiff also argues that these statutes are vague because they do not state whether they apply to second degree murderers, although they are applied to inmates convicted of all life crimes including first degree murder, kidnapping, etc.

Claim four challenges the procedures used in determining parole suitability. Accordingly, this claim may be raised in a civil rights action. Defendants also move to dismiss claim four for failing to state a colorable claim for relief.

California Penal Code § 3041(a) provides, in relevant part,

> (a) In the case of any inmate sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, the Board of Parole Hearings shall meet with each inmate during the third year of incarceration for the purpose of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding postconviction credit. *One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5...*

Cal. Penal Code § 3041(a)(italics added).

Cal. Penal Code § 3041.5 establishes procedural requirements for Board hearings.

In the instant case, speech is in no way implicated. Accordingly, to state a colorable claim plaintiff must demonstrate that section §§ 3041 and 3041.5 fail to give reasonable notice regarding the purpose of the hearing held one year prior to an inmate's MEPD date and whether they apply to second degree murderers.[2]

The italicized section of 3041 quoted above clearly states that the purpose of the hearing held one year prior to an inmate's MEPD date is to set a parole release date, if appropriate. It is also clear from reading § 3041 that this statute applies to inmates convicted of second degree murder. For these reasons, plaintiff's arguments that §§ 3041 and 3041.5 are unconstitutionally vague are without merit and should be dismissed.

In claim five, plaintiff alleges that defendants improperly used Cal. Code Regs. tit. 15, §§ 2400-2411 to override Cal. Penal Code §§ 3041(b) and 3041.5. Cal. Penal Code § 3041(b) provides that the BPH shall *normally* set a release date unless it determines that the gravity of the offense outweighs public safety. Plaintiff appears to argue that the standards set forth in §§ 2400-2411 for evaluating the gravity of offenses are harsher than the standards suggested by § 3041(b). Plaintiff argues that the regulations improperly result in parole being denied rather than *normally* being granted, as required by § 3041(b).

Claim five does not necessarily invalidate plaintiff's confinement. Were the court to find that the regulations violated the statute, the remedy would be to order a new suitability hearing. Accordingly, this claim may be raised in a civil rights action.

\\\\\

---

[2] In the amended complaint filed February 8, 2005, plaintiff argued that the statement in § 3041 that the parole board "shall normally set" a parole release date was vague because the statute did not define "normally set." Plaintiff also argued that the statute was unconstitutionally vague because it did not explain "uniform terms" or what "gravity and magnitude" meant with respect to the threat to the public. On April 10, 2006, this court found that these claims were not colorable and dismissed them with leave to amend.

Defendants also move to dismiss claim five for failing to state a colorable claim for relief. As noted by defendants, "[s]ection 1983 does not vest federal courts with the authority to enjoin the administration of, or to declare invalid, state laws on the grounds that they are incompatible with other state laws, much less rule that state laws are contrary to the state legislature's intent. Nor can we put in place prophylactic rules of our own making where the underlying state laws are not themselves contrary to federal law. That is the job of the state courts and state legislatures." McQuillion v. Schwarzenegger, 369 F.3d 1091, 1099 (9th Cir. 2004). For this reason, claim five should be dismissed.

Claim six alleges that in finding plaintiff unsuitable for parole in 2002, defendants improperly used seven rules violations finding violation of the grooming regulations. Plaintiff argues that he did not comply with the grooming regulations for religious reasons.

The seven rules violations were only one of several factors used by defendants to find plaintiff unsuitable for parole. Petition, Exhibit B, pp. 85-87. Therefore, the remedy were the court to find that defendants improperly used these rules violations to find plaintiff unsuitable would be a new suitability hearing where these rules violations could not be considered. Accordingly, this claim may be raised in a civil rights action.

Defendants also move to dismiss claim six for failing to state a colorable claim. Defendants state that in 2005, the Ninth Circuit found that the 1997 grooming regulations violated the Religious Land Use and Incarcerated Persons Act (RLUIPA) in Warsoldier v. Woodford, 418 F.3d 989 (2005). Defendants state that in response to Warsoldier, the grooming regulations were amended to comply with RLUIPA. Defendants state that as to future enforcement, it is speculative to assume that the BPH will consider violations of the 1997 grooming standards in parole determination decisions.

Because plaintiff is seeking prospective injunctive relief, his claim is moot if the rules violations for violating the 1997 grooming standards are no longer considered at his suitability hearings. In his opposition to the pending motion, plaintiff does not address this

claim. Accordingly, defendants' motion to dismiss claim six is granted with leave to amend. Plaintiff may file an amended complaint including this claim only if the BPH has continued to find him unsuitable based on these rules violations.

In claim seven, plaintiff argues that defendants used the "some evidence" standard to find him unsuitable for parole rather than the "substantial evidence" standard, as required by California law. This claim challenges a procedure used to find plaintiff unsuitable for parole and does not necessarily implicate the legality of plaintiff's confinement. Accordingly, this claim may be raised in a civil rights action. Defendants also move to dismiss this claim for failing to state a colorable claim for relief.

Whether defendants followed the proper state law standard for determining whether plaintiff was suitable for parole does not allege a violation of plaintiff's constitutional rights. A decision by the BPH finding a prisoner unsuitable for parole violates due process if the decision is not supported by some evidence. Sass v. Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006). Accordingly, this claim should be dismissed for failing to allege a violation of plaintiff's federal constitutional rights.

In claim eight, plaintiff alleges that defendants failed to apply presentence credits to his sentence. For the reasons discussed below, a finding that defendants failed to properly apply presentence credits does not invalidate plaintiff's confinement.

For indeterminate terms, time credits apply only to the setting of the MEPD at which time the prisoner is entitled to a parole suitability hearing. See In re Dayan, 231 Cal. App. 3d 184, 282 Cal. Rptr. 269 (1991). Therefore, assuming defendants failed to properly award presentence conducts, the only relief the court could order would be a recalculation of plaintiff's MEPD. Because plaintiff has already passed his MEPD, the court cannot order any relief as to this claim. For this reason, this claim should be dismissed.

In claim nine, plaintiff argues that defendants violated the Ex Post Facto Clause by setting his next parole hearings four years after his initial hearing in 2002. Plaintiff argues

that California law mandates annual parole suitability hearings for inmates convicted of second degree murder.

A finding that defendants should have ordered plaintiff's next suitability hearing in one year rather than four does not necessarily invalidate plaintiff's confinement. Rather, it challenges a procedure used in the parole suitability process. Accordingly, this claim may be raised in a civil rights action. Defendants also move to dismiss this claim for failing to state a colorable claim for relief.

The Supreme Court has stated: "To fall within the ex post facto prohibition, a law must be retrospective – that is, it must apply to events occurring before its enactment – and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 896 (1997). Plaintiff is not claiming that he was detrimentally affected by a change in the law regarding the frequency of parole suitability hearings. Rather, plaintiff is claiming that the law is not being properly applied, i.e. that the law requires that he receive annual parole suitability hearings.

Under California law, the BPH may deny a suitability hearing for an inmate convicted of murder for up to five years. Cal. Penal Code § 3041.5(b)(2)(B). Therefore, the decision to schedule plaintiff's next suitability hearing in four years did not violate California law. Accordingly, this claim should be dismissed.

Claim twelve alleges that defendant Schwarzenegger violated plaintiff's right to due process by failing to review the 2002 decision finding him unsuitable for parole. A finding that defendant Schwarzenegger failed to review the 2002 decision finding plaintiff unsuitable for parole challenges the procedures used to find plaintiff unsuitable. Accordingly, this claim may be raised in a civil rights action. Defendants also move to dismiss this claim for failing to state a colorable claim for relief.

\\\\\

1  California Constitution, Article 5, § 8(b) provides, in relevant part, that no
2  decision of the parole authority with respect to the granting, denial, revocation or suspension of
3  parole of a person sentenced to an indeterminate term upon conviction of murder shall become
4  effective for a period of 30 days, during which the Governor may review the decision subject to
5  procedures provided by statute.  Plaintiff's claim is without merit because defendant
6  Schwarzenegger is not required to review decisions finding prisoner's unsuitable for parole.
7  Accordingly, this claim should be dismissed.
8  Claim eleven alleges that defendants found plaintiff unsuitable for parole pursuant
9  to a no-parole policy authorized by former Governor Gray Davis.  Defendants move to dismiss
10 claim eleven on grounds that granting it would necessarily implicate the validity of plaintiff's
11 confinement.  For the reasons discussed below, plaintiff's remedy were the court to find in his
12 favor would be a new suitability hearing rather than an order releasing him from prison.
13 Accordingly, this claim may be raised in this civil rights action.
14 Defendants have not moved to dismiss claim eleven for failing to state a claim.
15 However, because this claim is not colorable the court recommends sua sponte that it be
16 dismissed.  28 U.S.C. § 1915(e)(2).
17 Plaintiff  argues that he was been denied parole pursuant to a no-parole policy.
18 Plaintiff cites Coleman v. Board of Prison Terms, CIV S-96-0783 LKK PAN P in support of this
19 claim.  In Coleman, the Honorable Lawrence K. Karlton found that under Governors Wilson and
20 Davis, the BPH disregarded regulations ensuring fair suitability hearings and instead operated
21 under a sub rosa policy that all murderers be found unsuitable for parole.  See December 22,
22 2004, findings and recommendations, adopted by the district court on December 2, 2005.
23 Plaintiff's assertion of a "no parole" policy in 2002 raises profoundly complex
24 issues in light of the Findings and Recommendations/Order of Adoption/Judgment in Coleman v.
25 Board of Prison Terms, CIV-S-96-0783 LKK PAN P, appeal pending.  In Coleman, the court
26 found that a no parole policy was in effect for California "lifers" in 1999 which infected

Coleman's BPT proceeding in 1999. Coleman rejected the BPT's "so what" assertion that the presence of some evidence would ameliorate the policy because Coleman properly found a biased decision maker to be structural error not susceptible to a harmless error standard. The remedy in Coleman required that plaintiff be given a new hearing before an unbiased panel of BPH commissioners.

Complex issues abound insofar as Coleman is urged by plaintiff as applicable to his 2002 BPH hearing. Some of those issues are as follows: (1) was the holding in Coleman applicable to *all* BPH panels or just the panel at issue in Coleman; (2) how does one reconcile state court holdings contrary to Coleman, which are also entitled to res judicata/collateral estoppel effect in federal court; (3) what is the effect of Coleman in this case where the BPH commissioners *expressly* disavowed that any "no parole" policy would motivate their decision. There may be other issues upon further reflection. However, in this case the complexity of the trees (issues) admit to a rather easy decision in respect to the forest – which has the effect of mooting the "no parole" policy issue. The solution hinges upon the appropriate remedy even if the petition were to be granted in this case on the "no parole" policy.

In Coleman, the appropriate remedy given was an order that Coleman receive a hearing before unbiased commissioners. As Judge Karlton noted in a follow-up order in Coleman when denying plaintiff's request for immediate release, the fact that Coleman had a hearing in 2005 more or less obviated the structural error found for the 1999 hearing. That is, Judge Karlton found that no evidence had been presented to suggest that the 2005 BPT panel was affected by a no parole policy. In late 2003, a new Governor had been elected in the latter part of 2004 for whom the record was silent with respect to an enunciated "no parole" policy. Plaintiff had received, in effect, the remedy ordered by the initial decision – a hearing from a panel unaffected by the found "no parole" policy – or at least there was no evidence to suggest that the 2005 panel was biased.

\\\\\

In this case, as far as the record demonstrates, plaintiff had a parole eligibility hearing in 2006. It is possible that he has had another eligibility hearing since 2006. There is no indication that any 2006 panel would be affected by a historical "no parole" policy assertedly instituted by two previous governors. Thus, the only remedy to be ordered here based on a "no parole" policy in 2002 is for plaintiff to have another parole eligibility hearing, a remedy he has already received. Accordingly, this claim should be dismissed as moot.

Finally, in claim ten plaintiff alleges that defendants violated the Americans with Disabilities Act (ADA) by finding him unsuitable for parole in 2002 based on his failure to complete a vocational trade. Plaintiff alleges that his physical disabilities prevent him from learning a trade.

Defendants relied on plaintiff's failure to complete a vocational trade as well as other factors in finding him unsuitable for parole. Second Amended Complaint, Exhibit B, pp. 85-89. Therefore, the remedy were the court to find that defendants improperly used this factor to find plaintiff unsuitable for parole would be a new parole hearing. Accordingly, this claim may be raised in a civil rights action.

Defendants have not moved to dismiss claim ten for failure to state a claim. Accordingly, this claim is not dismissed.

Accordingly, IT IS HEREBY ORDERED that claim defendants' March 7, 2007, motion to dismiss for failure to state a claim is granted with leave to amend as to claim 6; plaintiff is granted thirty days to file a third amended complaint; if plaintiff files a third amended complaint, he may include the other claim found colorable above, i.e. claim 10; if plaintiff does not file an amended complaint, defendants shall file an answer to claim 10 within twenty days of the adoption of these findings and recommendations;

IT IS HEREBY RECOMMENDED that:

1. Defendants' March 7, 2007, motion to dismiss be granted as to claims 1-5, 7-8, 9, 12.

        2. Defendants' March 7, 2007, motion to dismiss be denied as to claim 10.

        3. Claim 11 be dismissed sua sponte for failing to state a colorable claim for relief.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/7/07

                                                /s/ Gregory G. Hollows

                                                UNITED STATES MAGISTRATE JUDGE

staich.mtd